LINDERMAN *et al.*, Defendants in Error, v. EDSON *et al.*, Plaintiffs in Error.

1. A justice of the peace certified a transcript as follows : " I certify the above and foregoing to be a full and complete transcript of the above entitled cause now of record on docket of David W. Doak, deceased, late justice of the peace within and for St. Ferdinand township, in St. Louis county. [Signed] S. H., Justice of the Peace." *Held*, that the justice so certifying would be presumed to be in the lawful possession of the docket of the deceased justice.

2. A. sued B. and C. in a justice's court, and obtained judgment; execution issued and was returned "*nulla bona*" as to one of the defendants, but whether as to B. or C. did not appear; nor did it appear against which of said defendants said execution issued, nor whether it issued against both defendants. A transcript of said judgment was filed in the Circuit Court, and an execution was issued thereon, and real estate belonging to B. was sold at a sheriff's sale thereunder. *Held*, that the purchaser at sheriff's sale acquired no title.

### *Error to St. Louis Land Court.*

This was a suit in the nature of an action of ejectment brought by the plaintiffs as heirs of Henry Linderman, against the heirs of Homer Edson, to recover possession of a tract of fifty arpens of land in the county of St. Louis. The defendants set up title in themselves. Taylor Johnson is the common source of title. In support of their title the plaintiffs introduced a transcript from the clerk's office of the Circuit Court of St. Louis county. From this transcript it appeared that on the 21st of April, 1845, there was filed in that office the following transcript :

" William Jacob Miers & Co. v. Taylor Johnson and H. W. Carter. Suit on a joint promissory note for $32. Said note bears date on the 4th day of November, A. D. 1842; and made payable nine months after date. Summons issued the 5th February ; returned executed on the 17th. On the return day the defendant appears ; stays proceedings until the first day of June thereafter. Now on the first day of June, being the day of trial, defendants comes not, but makes default. Judgment for plaintiffs for amount of said note, interest and costs of suit by default. Debt, $32; interest,

60 cents; justice's fees, 56 cents; constable's fees, 50 cents. *Fi. fa.* issued 3d day of June, 1844; alias *fi. fa.* issued on 31st of October, 1844; returned 'no goods' of the within defendant found whereof to levy. [Signed] David W. Doak, J. P."

"I certify the above and foregoing to be a full and complete transcript of the above entitled cause now of record on docket of David W. Doake, deceased, late justice of the peace within and for St. Ferdinand township, in St. Louis county. [Signed] Samuel Henley, Justice of the Peace."

It appeared also that on the 21st of April, 1845, execution issued on said transcript from the clerk's office of said Circuit Court; that the tract of land in controversy was levied on as the property of the said Taylor Johnson; that the same was sold by the sheriff to John Smith and Henry Wortman, June 16, 1845; that the sheriff executed a deed to the purchasers, who conveyed the same to Henry Linderman, plaintiff's ancestor. Defendants claimed by virtue of a deed from Taylor Johnson to Homer Edson, their ancestor, dated May 20th, 1845.

The cause was submitted to the court upon the above facts (which were agreed upon by the parties) under an agreement that if the court should be of opinion that the evidence adduced is admissible and competent, and that plaintiffs ought to recover, they (plaintiffs) shall have judgment for possession of the premises. The court gave judgment for plaintiffs.

*S. Reber*, for plaintiffs in error.

I. Where a party claims under a sheriff's deed, he must show a judgment, and if it is a justice's judgment, he must further show that an execution had been issued by the justice and a constable's return of *nulla bona*. (Coonce v. Munday, 3 Mo. 374; Murray v. Laften, 15 Mo. 621.) In this case, the only scintilla of evidence that an execution was issued by the justice is found in the transcript of the docket filed in the clerk's office, where it is stated, "*fi. fa.* issued June 3, 1844; alias *fi. fa.* issued October 31st, 1844; re-

turned, ' no goods of the within *defendant* found whereof to levy.' " It does not appear against which of the defendants it was issued, nor when returnable, nor when returned, nor to whom directed or delivered; whether to a constable or some other officer, or to no officer at all; nor by whom the return was made. Can the court guess that every thing was regularly done from this slight memorandum of the justice ? Besides, an execution issued by a justice and not returnable according to law is void. (Stevens v. Chouteau, 11 Mo. 382.) The memorandum on the justice's docket of the *return* of the execution is not evidence, because he was not required by law to make it. It being established by this court that an execution must be issued by the justice and returned by the constable *nulla bona*, and that an execution not returnable according to law is void, it follows that a party claiming title under an execution from the Circuit Court on a justice's judgment, must show a valid execution issued by the justice, and a proper return thereof. If this is not shown, the party's title is defective, for the sale is void.

II. Was the judgment of the justice rendered against both of the defendants, or only against one of them ? and if so, which one ? In the caption of the entry in the justice's docket, Johnson *and* Carter are mentioned as defendants; but in all the subsequent entries " *defendant*" is mentioned in the singular, except in one unimportant instance; and so in the return of the execution, no goods of the " within defendant" are found, &c. Thus showing, both in the judgment and in the return, that only one of the nominal defendants was a party to the suit; and if this be so, why not sell the land of Carter as well as that of Johnson ? The docket entry shows the entry in the singular was not a grammatical error, but is according to the truth of the fact that only one of the parties was sued and served with process.

III. But if the justice's transcript contained a perfect judgment and a regular execution and return, it was inadmissible evidence, because not properly authenticated. What authority had Justice Henley to certify a transcript of the

" docket of David W. Doak, late justice of the peace," &c. ? The 14th section of the act concerning evidence, (Sess. Acts, 1838-9, p. 43, which has been incorporated in the revised codes of 1845 & 1855, tit. " Evidence,") provides that the proceedings of a justice out of office may be certified by a justice who has possession of his docket and papers. This is the whole law on the subject. Now what evidence is there that Henley was Doak's successor or had possession of his docket ? The possession spoken of in the statute is a legal possession, not a mere manual possession, and that legal possession must be in some way proved before a transcript certified by the possessor can be received in evidence. The statute provides how the docket and papers of a justice retiring from office shall be transferred to another justice, so that that other may come into lawful possession thereof. The fact of the transfer then is a fact to be proved when it is attempted to use copies certified by the latter. How the fact is to be proved is not for me to say ; perhaps the justice's own certificate of the fact would be sufficient. But certainly the mere fact of the justice's making a certified copy of a record is no evidence that that record is in his lawful custody.

*Gibson*, for defendants in error, cited Mooney v. Williams, 15 Mo. 443 ; Palmer v. Hunton, 8 Mo. 514.

Scott, Judge, delivered the opinion of the court.

It is made an objection to the action of the court below that it admitted in evidence the certificate of the justice who returned the transcript to the office of the clerk of the Circuit Court, which does not show how he became possessed of the papers and records of the justice whose proceedings he transcribed and certified. The justice who certified the transcript not being the same officer before whom the cause was tried and by whom the judgment was entered, it is maintained that it should appear by evidence, or at least that his certificate should show, how he came into the possession of the docket and papers of the other justice. The law points

out two modes in which one justice may become possessed of the papers of another. The second section of the act to recover records provides that " when any civil officer shall die, having any record, books or papers appertaining to any public office or any court, his executor or administrator shall deliver such records, books and papers to his successor." The 32d and 33d sections of the act to provide for the election of justices of the peace and to prescribe their powers and duties, direct that " whenever a justice of the peace shall resign, remove out of the township, or be otherwise disqualified, he shall immediately thereafter deliver to the clerk of the county court all dockets, records, books, papers and documents appertaining to his office, or relating to any suit, matter or controversy committed to him in his official capacity ; and that the clerk shall immediately thereafter cause the same to be delivered to some justice of the peace of the township in which the vacancy happened." The law nowhere provides the manner by which it shall appear in such cases that the certifying justice is the successor of him of whose papers he gives copies. If proof of such fact was required, on what ground would the certificate of the justice be evidence of it ? The objection would require evidence *in pais* that the papers had been delivered, for the statute does not make the certificate of the justice evidence of such fact. Does not the fact that the justice certifies the papers officially raise a presumption that he is lawfully possessed of them ? Should not that presumption stand until the contrary is made to appear ? In the higher offices, when there is a devolution of their duties from one incumbent to another, it is not necessary to prove that the acting incumbent is a regular successor. That is presumed until the contrary is shown. If, when one as a justice gives a certificate, we presume him, until it otherwise appears, to be duly elected and qualified; why may we not presume, when he officially certifies a paper to be a copy, that the original is lawfully in his possession, when we know by law that it may be with him ? Why not require proof of his qualification and election in the one case as well as of his

possession of the original in the other? We are supposing a case in which the principle in relation to officers *de facto* would not be applicable. We do not consider that the 24th section of the act concerning evidence affects this question. A certified copy of any public paper in the custody of an officer is evidence on general principles. The section must be regarded as cumulative.

We do not see how the objection of a want of an execution on the justice's judgment can be surmounted. There is nothing in the circumstances of this case which should create an inclination to relax the rules of evidence in order to sustain the title acquired by the sheriff's sale. That title was acquired after the deed through which the defendants claim. That deed was for a valuable consideration, and, from every thing that appears, with but constructive notice. The plaintiffs and those through whom they claim, taking a title which was to displace others acquired for value, should be prepared to show that the law has been complied with. If we take it that in the justice's proceedings there was a judgment against both defendants, yet it can not be made to appear against which of the defendants the execution issued, even admitting that the memorandum of the justice on his docket was evidence that an execution had been issued, about which we give no opinion. The execution was not in evidence, and the plaintiffs relied on a memorandum on the justice's docket, in these words: " *Fi. fa.* issued the 3d day of June, 1844; alias *fi. fa.* issued on the 31st October, 1844. Returned, ' no goods of the within defendant found whereof to levy.' " To sustain this case, it was necessary for the plaintiffs to show that there was a judgment against two. Now with such an entry placed opposite a judgment against two persons, how is it possible to say that it was against both? and even if it was against both, which of the two had no goods whereof to levy? Cases have been decided on the difference between *defendant* and *defendants*—the singular and the plural. We do not know that the word *defendant* by itself, like the word *heir*, has ever been taken as a *nomen collectivum*. We will not

say that it may not be placed in such connection as to import a plural signification. This may seem a nice distinction, but, as before observed, we see nothing in this case on its merits which should create an inclination to administer the law otherwise than in all other cases. The plaintiffs' title was acquired after another. In order to defeat that title they must be prepared to show that on their side the law has been complied with. They knew that they could only obtain a title by showing a compliance with the law. Judge Ryland concurring, judgment reversed, and cause remanded ; Judge Leonard absent.