THE STATE OF MISSOURI, Respondent, v. JOHN DOBBINS, Appellant.

Kansas City Court of Appeals, January 8, 1906.

**LOCAL OPTION : Notice of Election: Number of Insertions.** Under the local option law the notice of election must be given for twenty-eight days, which notice if in a weekly paper requires five insertions, and the election can take place on any of the ten days next following the fifth insertion. Cases considered and distinguished.

Appeal from Mercer Circuit Court.—*Hon. Paris C. Stepp,* Judge.

AFFIRMED.

State v. Dobbins.

*Martin Read and H. J. Alley* for appellant.

(1)   Appellant contends that the election to have been valid must have been held within ten days of the last insertion of the four consecutive week's notice. That the time for holding the election is mandatory. McCrary on Elections (2 Ed.), 125; White v. Ruark, 34 Mo. App. 325; State v. Samuel Webb, 49 Mo. App. 407; 4 S. W. 494; Bean v. Barton Co., 33 Mo. App. 635. (2) Criminal statutes must be interpreted literally when the language is plain and free from ambiguity. Black on Interpretation, pp. 35, 36, 286, 294. Four weeks means twenty-eight days. State ex rel. v. Tucker, 32 Mo. App. 620, and cases cited. (3) An affirmative enactment of a new rule implies a negative of whatever is not included or is different, and if by the language used a thing is limited to be done in a particular form or manner it includes a negative that it shall not be done otherwise. Ex parte Joffee, 46 Mo. App. 360.

*Orton & Orton,* for respondent.

(1)   We find no cases, and evidently the counsel for the appellant has found none, which hold that where there is publication of the statutory notice for more than four weeks and for more than the time required by the law that in determining as to whether there was sufficient notice the court must select some four of the publications and then apply the test to these specific publications to see if they alone come up to the requirement of the law.

ELLISON, J.—The defendant was tried and convicted in the circuit court of Mercer county for selling intoxicating liquors in less quantity than four gallons. He has prosecuted his appeal to this court.

The particular law, he was accused of violating, was what is known as the local option law, which, according to the allegation in the information, had been duly

adopted in Mercer county. Defendant insists that the election was void in that legal notice was not given for holding the special election, at which that law was supposed to have been adopted, and that is the sole question for decision. The local option statute was enacted in 1887 and has been carried forward into the revision of 1899. The notice required for the election is the same now as originally enacted. It reads as follows: "Notice of such election shall be given by publication in some newspaper published in the county, and such notice shall be published in such newspaper for four consecutive weeks, and the last insertion shall be within ten days next before such election, and such other notice may be given as the county court or municipal body ordering such election may think proper, in order to give general publicity to the election." [Sec. 3029, R. S. 1899.]

The election in question was held on the 6th day of September, 1887; and the notice for the election was published in two weekly newspapers issued in Mercer county, the Princeton Telegraph and the People's Press. In the Telegraph, it was inserted August 4, August 11, August 18, August 25, and September 1. In the Press, it was inserted August 3, August 10, August 17, August 24, and August 31. It was thus inserted five times consecutively in each paper and the last publication in each was within ten days of the election.

As we understand defendant's position, it is this, that the first four publications ending August 24 in the Press and August 25 in the Telegraph constituted the notice required by the statute; and that the election held on September 6, not being within ten days of either the 24 or 25, was void. That position ignores the fifth insertion in the next week's issue and assumes that it should not be considered as a part of the notice. As the first four publications did not cover a period of twenty-eight days, it is evident that defendant's construction of the statute is that twenty-eight days' notice is not necessary. If, however, twenty-eight days' notice is nec-

essary to a valid election, then there must be more than four insertions in all weekly newspapers issued, on corresponding days of each week, since four insertions would only cover a period of twenty-one days. Therefore, the first question is: Does the statute in requiring a notice for four consecutive weeks contemplate a notice of twenty-eight days? We held in the case of State ex rel. v. Tucker, 32 Mo. App. 620, that it did. That the notice required was not merely a notice put in a newspaper for four consecutive weekly issues, but that the notice must cover a period of four weeks, that is to say, twenty-eight days. Our view was that the Legislature, in enacting the statute, was not concerned about the number of weeks the notice might have to be inserted in order to cover twenty-eight days; that its solicitude was to secure notice for that length of time; and that the election should not occur farther away than ten days from the last insertion.

The defendant's position is directly in the face of the construction we put upon the statute in that case; which brings up the inquiry whether that construction is sound. The view, we there stated, has been reiterated by the courts of appeals: Bean v. Barton County Court, 33 Mo. App. 635; State v. Kaufman, 45 Mo. App. 656; State v. Kampman, 75 Mo. App. 188; State v. Martin, 83 Mo. App. 55. And the case has been several times cited by the Supreme Court with no intimation that it had been wrongly decided (120 Mo. 418; 123 Mo. 346). On the contrary, it seems to have been regarded as correct and approved of in an opinion by Judge BURGESS in Young v. Downey, 150 Mo. 317, 324, 330.

But it is suggested that later cases in the Supreme Court (Russell v. Croy, 164 Mo. 69, and Ratliff v. Magee, 165 Mo. 461) announce a construction of similar statutes, which is opposed to the view taken in State ex rel. v. Tucker. That is a mistaken idea. On the contrary, those cases affirmatively approve the construction of the statute, which we adopted in that case. The case

of Russell v. Croy involved the construction of a require-
ment of the Constitution as to the publication of notice
of constitutional amendments to be voted upon at a gen-
eral election, which reads as follows: "The proposed
amendments shall be published weekly in some newspa-
per, if such there be, within each county in the State, for
four consecutive weeks next preceding the general elec-
tion then next ensuing." It is true that that provision
has the same words "for four consecutive weeks," which
are used in the statute involved in this case, and that
they were held not to mean twenty-eight days. But, as
said by Judge VALLIANT, their meaning is influenced and
controlled by other words of the provision, not found in
the statute we are considering. The Judge says at page
91 of the report, that " the same words occurring in dif-
ferent statutes of somewhat similar character do not
necessarily bear the same interpretation; their meaning
is influenced by the particular context and sometimes by
the object to be obtained by the statute itself." He then
proceeds to show that under a statute considered in
Young v. Downey, 150 Mo. 317, reading that, "Such no-
tice shall be published for four weeks in some newspaper
in the county in which the proceedings were had," the
expression, as thus worded (substantially identical with
the one we are now considering), meant a publication
covering a period of twenty-eight days. But he inter-
preted the words involved in Russell v. Croy, "shall be
published *weekly*," as limiting, qualifying or explaining
the subsequent words "for four consecutive weeks."
That taken together, the whole expression meant only
that the publication should be made once in each of the
four weeks next before the election; and so it is stated in
Ratliff v. Magee, 165 Mo. 461, 467. If one person says to
another, "publish this notice *once a week* for four con-
secutive weeks," it is manifest that he means to direct
that it shall be published once in each of four consecu-
tive weeks, without regard to the period of time such

publication would require. But, if the direction was to "publish this notice for four consecutive weeks," a wholly different meaning is apparent, for in such case the publication must continue for four weeks, or twenty-eight days. So we regard it as quite clear that the Supreme Court has approved the construction, which we gave the statute in State ex rel. v. Tucker, not only by the decision that court made in the case of Young v. Downey, but in the subsequent cases to which we have just referred.

As stated at the outset, defendant's position ignores the publication of the notice made in the fifth week. He assumes that that publication was unauthorized and that the fourth publication completed the notice, and that being more than ten days prior to the election, the election was void. It may be suggested that the following portion of Judge VALLIANT'S opinion in Russell v. Croy gives countenance to defendant's course of argument, viz: "The four weeks here called for are not any four weeks the Secretary of State may select prior to the election, but they must be the four weeks next preceding the election. If the Secretary of State had chosen to begin the publications on the first day of September and run them into the first week in October so as to secure, with the varying days of publication among the newspapers, a full period of twenty-eight days, that would not have answered the requirement of the Constitution, because the four weeks so covered would not have been those next preceding the election. And if he had run the publication so begun, through the month of October and thus covered more than twenty-eight days or four weeks, still the only period of the publication that would have answered the requirement of the law would have been the four weeks next preceding the election, the rest would have been in legal effect as if it had not been. If the publication should be for four weeks and it began five weeks before the day of the election, it would not have covered the period called for by the Constitution, because it

would not have covered the week immediately preceding, and if it had continued five weeks up to the day of the election, the only valid publications would be those in the last four weeks."

That language in no way applies to the statute in the case before us. The statute in that case specifically named the weeks in which the publication should be made, which were the four weeks which immediately preceded the election. Hence, no other four weeks would answer and no time except the time running during the course of the four weeks preceding the election would be counted as of any effect. But the local option statute does not specify any particular weeks in which the notice shall be published, nor, as we have already shown, does it direct that a given number of publications be made. It merely directs that the publications shall continue consecutively until the period of twenty-eight days shall be covered, and that the last insertion necessary to make the twenty-eight days must be within ten days of the election.

An additional view of the construction of the statute presented by counsel, concedes that twenty-eight days' notice must be given, but insists that such notice consists of four publications; that no other publication than the four are recognized; that twenty-eight days must elapse between the first publication and the election, and the election must be within ten days of the last one. Put into practical application that construction would only leave one of four days in which any election could be held, instead of one of ten as contemplated by the statute. Thus, suppose the first publication to be on the first of August, the fourth publication would be on the twenty-second, but twenty-eight days would not elapse from the first publication until the twenty-ninth; and the election, according to this view, could not be held sooner than that day. And it could not be held later than the first of September, as that would put it off more than ten days from the last publication. So the time in

which an election could be held would be necessarily limited to four days, viz.: 29th of August to 1st of September. But, manifestly, the statute intended that the election could be held on any of the ten days next after the last publication. Besides leading into this, as we think, awkward situation, the view as presented, assumes words to be in the statute which are not there. It assumes that the statute reads that the notice shall be published four times and that there shall be four insertions. In that way, a construction is built up that the publication, if it is published four times, may stop short of the twenty-eight days, though the election must not be held until that period has elapsed. But there is no suggestion of that kind in the statute. As we have already stated, the statute is that the notice shall be published, not four times, but for four weeks. To publish anything for a certain length of time means that the publication must not cease, but must continue, until that time has run.

The idea that the statute requires only four publications, or four insertions of the notice possibly springs from assuming that it should be published in a weekly paper. But the statute does not require the publication in a weekly paper; it may just as properly be published in a daily. If published in the latter, would any one be found to say that the publication should cease before twenty-eight days had ended? It ought then to be clear that one length of time should not be required for one kind of publication and a different time for another kind of publication.

It follows from the foregoing that the local option law was legally adopted in Mercer county, and that the conviction of the defendant should be affirmed. The other judges concur.