State v. Brown.

## STATE OF MISSOURI, Respondent, v. BROWN, Appellant.

### St. Louis Court of Appeals, March 31, 1908.

1. **LOCAL OPTION: Notice of Election.** The provision of section 3029, Revised Statutes 1899, requiring four weeks' publication of notice of a local option election, is complied with where the notice is published for four consecutive weeks and twenty-eight days intervene between the first insertion of the notice and the day of the election, and less than ten days intervene between the last insertion of the notice and the day of the election.

2. ————: ————: **Presumption.** In review of a prosecution for violation of the local option law, where the notice of the election adopting the law is not in the record, the appellate court will presume, in the absence of anything shown to the contrary, that the notice was properly authenticated as required by the statute.

3. ————: **Adoption of Law: Question of Law.** It is for the court and not for the jury in a prosecution for violation of the local option law to determine whether the law has been adopted.

4. ————: **Selling Liquor: Prima-Facie Case.** In the prosecution of one for selling liquor in violation of the local option law, the evidence is examined and held sufficient to sustain a verdict of guilty.

Appeal from McDonald Circuit Court.—*Hon. F. C. Johnston,* Judge.

AFFIRMED.

*Clay & Sheppard* for appellant.

(1) The law requires that notice of a local option election shall be given by publication in some newspaper published in the county for four consecutive weeks, that is twenty-eight days, and an election held without the required notice is illegal and void. Under the local option law it is necessary in giving this notice, if given in a weekly paper, to have five insertions

or five publications. State v. Dobbins, 16 Mo. App. 29; State v. Tucker, 32 Mo. App. 620; Bean v. Barton County Court, 33 Mo. App. 635; State v. Kaufman, 45 Mo. App. 656; State v. Martin, 83 Mo. App. 188; Young v. Downey, 150 Mo. 324; Russel v. Croy, 164 Mo. 69; Ratliff v. Magee, 165 Mo. 461. (2) There was no notice of said election given by the county court, nor was any notice given by the county court of the result of said election. The only notice that was ever given of said election or of the result thereof was signed by Zack Baker, the clerk of the county court. The notice should have been given by the county court, the body ordering said election. R. S. 1899, secs. 3029, 3031.

*Joseph S. Long* for respondent.

The court properly held that the local option law had been legally adopted in McDonald county and that said law was in force and effect in said county at the time that it is alleged in the information that defendant made the said sale of intoxicating liquor. It is plain to be seen by the records that twenty-eight days intervened between the first publication of the notice and the day of said election. The records showing these facts, the notice for holding said special election was properly given and published. Curzen v. Stephens, 123 Mo. App. 345; State v. Hutton, 39 Mo. App. 415; State v. Kaufman, 45 Mo. App. 659; State ex rel. v. Tucker, 32 Mo. App. 628; Young v. Downey, 150 Mo. 324; Haywood v. Russell, 44 Mo. 257; State v. Dugan, 110 Mo. 146; R. S. 1899, sec. 3029.

BLAND, P. J.—The appeal is from a conviction of defendant for an illegal sale of intoxicating liquor. The information was filed before a justice of the peace in McDonald county, and charged that defendant, on September 8, 1905, sold intoxicating liquor, in McDonald county, in violation of the local option law, which the

information alleged had been adopted in said county and was in force therein. In due course the cause was appealed to the circuit court, where on a trial de novo defendant was found guilty and his punishment assessed at a fine of $300. Various errors are assigned as having intervened on the trial.

1.    First, it is contended that the notice of the local option election was insufficient under the statute and for this reason the election was void. The county court ordered the election to be held on April 9, 1904, and ordered that notice of the election be published in the Pineville Herald, a weekly newspaper, printed and published in McDonald county. The fact is uncontroverted, that the notice appeared in the designated paper, the Pineville Herald, for four consecutive weeks, namely, March 11th, 18th, 24th and April 1, 1904. Excluding March eleventh, the date of the first insertion, and including the day of the election (April ninth) twenty-nine days, or four weeks and one day intervened between the publication of the notice and the day of the election, and less than ten days between the date of the last insertion of the notice and the day of the election. The statute (R. S. 1899, sec. 3029) provides that the "notice shall be published in such newspaper (designated by the county court) for four consecutive weeks, and that the last insertion shall be within ten days next before such election." This provision has been repeatedly construed to mean that there shall be twenty-eight days' notice of the election and that a notice which allows a less number of days is insufficient. [In re Wooldridge, 30 Mo. App. 612; State ex rel. v. Tucker, 32 Mo. App. 620; Leonard v. Saline Co. Court, 32 Mo. App. 633; State v. Kaufman, 45 Mo. App. 656; State v. Kampman, 75 Mo. App. 188.] As stated, twenty-nine days intervened between the first publication of the notice and the day of the election, and we think the notice was published in strict compliance with the stat-

ute.  But we are cited by defendant to the case of State
v. Dobbins, 116 Mo. App. 29, wherein the Kansas City
Court of Appeals, in an opinion written by Judge ELLI-
SON, held, in effect, that if the notice is published in a
weekly paper there should be five insertions, and that
a publication in four consecutive weekly issues of the
paper would not meet the requirements of the statute.
The facts in judgment in that case were, the notice of
the election was ordered to be published in two weekly
papers; in one the notice was inserted August fourth,
eleventh, eighteenth and twenty-fifth and September
first; in the other it was inserted August third, tenth,
seventeenth and thirty-first.  The last insertion in each
was within ten days of the election.  The fourth inser-
tion was more than ten days before the election, hence
it was essential to the validity of the election that a
fifth insertion be made.  But we are unable to concur in
the reasoning of our learned Brother ELLISON, by which
he reaches the conclusion that five insertions in a week-
ly newspaper are necessary to give four weeks' or twenty-
eight days' notice; nor do we think his reasoning is
supported by the case cited and relied on by him, namely,
State ex rel. v. Tucker, supra.  The time intervening be-
tween the date of the first insertion of the notice in that
case and the election was but twenty-four days.  On this
state of facts Judge ELLISON, at page 628, says:  "Does
the law require a notice of four weeks, of seven days
each, or does it only require a sufficient period of time
to cover four consecutive weekly insertions, though such
time be less than twenty-eight days?  In other words
must there be four weeks' notice of the election or a
less time.  Our answer is that there must be four weeks'
notice—twenty-eight days' notice—of the election, the
computation to be made by excluding the first day of the
notice and including the day of the election.

In Hayward et al. v. Russell et al., 44 Mo. l. c. 254,
Judge BLISS, in commenting on the statute in respect

to the publication of notice of an attachment suit, said:
"The statute requires that notice should be published
for four weeks, and that the last insertion should be at
least four weeks before the commencement of the term.
If the first publication is for one week, surely the other
three are for one week each, and it is only necessary
that 'the last insertion'—not the last week—should be
four weeks before the term.   The notice objected to was
published in a weekly paper, in four consecutive num-
bers, which makes four weeks."   This ruling was ap-
proved by Barclay, J., in Cruzen v. Stephens, 123 Mo.
337, 27 S. W. 557, where it was held that a publication
of a notice in a tax suit on March seventh, fourteenth,
twenty-first and twenty-eighth was four weeks publica-
tion.   In the case of Young v. Downey, 150 Mo. 317, 51
S. W. 751, is is said these cases should no longer be
followed.   The publication in the Downey case was a
notice by an administrator of his intention to apply
to the probate court for an order to sell lands belonging
to his intestate.   This notice was published on the
eighth, fifteenth, twenty-second and twenty-ninth of
September, while the first day of the court at which the
order was made was October second.   The statute re-
quired that the notice should be published for four
consecutive weeks before the first day of the term, and
it was held that as but twenty-six days intervened be-
tween the first insertion of the notice and the first day
of the term, that four weeks' or twenty-eight days' no-
tice was not given.   But it was not held that if twenty-
eight days had intervened between the first insertion
and the first day of the term, the notice would have been
insufficient, or that it was necessary to have five inser-
tions to give twenty-eight days' notice.

In the matter of Wooldridge, supra, it was held by
this court, Rombauer writing the opinion, that the stat-
ute (3029, supra) was satisfied if twenty-eight days in-

tervened between the first of consecutive publications and the day of the election.

In Ratliff v. Magee, 165 Mo. 461, 65 S. W. 713, it is said: "The statute required that the notice for the final settlement of an estate should be 'published for four weeks' prior to the term. *Held,* that this statute required a notice to be published for four weeks or twenty-eight days prior to the beginning of the term, but did not require that four weeks should intervene between the date of the last publication of the newspaper and the first day of the term; and, hence, a notice published in a newspaper on March 24, March 31, April 7, and April 14, prior to the beginning of the term on May 8, met the requirements of the statute and was sufficient."

The Dobbins case seems to assume that the notice ceases to be published the day after the paper leaves the press; that it does not continue to be published from one issue of the paper to the next succeeding one. If this were true, a notice published in a weekly newspaper four times would only give four days' notice and, to comply with the requirements of the statute, it would be necessary to publish the notice for twenty-eight days in a daily paper, or for twenty-eight weeks in a weekly newspaper. The notice, as such, when published in a weekly does not cease to impart notice the day after the paper leaves the press, but continues, within the meaning of the statute, to be published until the issuance of the next current number of the paper, or for seven days. The last insertion should be held to continue for the same length of time to impart notice of the election.

2. The point is made that because the notice was signed by the clerk of the county court it was void. The statute provides that on a proper petition, the county court shall order an election to be held in the county, etc., and the result of the election shall be entered upon the records of the court. A certified copy of the order

of the court ordering the election would be a proper notice, and it would be the clerk's duty to certify the order and deliver it to the newspaper designated to publish the same. The notice itself is not in the record. Following the rule that right action is to be presumed in favor of officers in the discharge of their official duties, we will assume, in the absence of evidence to the contrary, that the notice was properly authenticated and rule this point against defendant.

3. To show that local option had been adopted, the prosecuting attorney introduced the records of the county court, which show that a proper order for the election was made and that the result was made a matter of record. The court heard the evidence in respect to the adoption of the law in the absence of the jury, and at the close of the case instructed the jury that the law had been adopted. Defendant contends that this was error; that it should have been left to the jury to determine whether or not local option had been adopted. This is not the law and never has been. The law is thus stated by Judge THOMPSON, in State v. Searcy, 39 Mo. App. l. c. 406: "The question, whether a law which is to be a rule of conduct exists or does not exist, is a judicial question, and cannot be submitted to the ignorance or caprice of a jury. Thus, it has been held that the question, whether what purports to be an act of the Legislature of the State was duly passed with the concurrence of the requisite majority of the members of both houses, as is required by the Constitution of the State, so as to become a valid law, is a question for the court, and not for the jury."

4. It is finally contended that the State's evidence fails to show defendant sold the liquor. Defendant is a blacksmith, and the evidence shows that Moffett and two other persons went to his shop where he was at work. When they arrived at his shop defendant was

welding a piece of iron. Moffett said to him, "These boys want some booze." Defendant replied, "You will have to wait and blow for me until I make this weld." Defendant made the weld, washed his hands, and he and Moffett went out of the shop and the purchaser of the whiskey went into a room adjoining the shop and under the same roof, and there received a bottle of whiskey from the hands of Moffett, to whom he handed a dollar. Moffett went into the shop, to which defendant had returned, and came back into the room with fifty cents in change, which he handed to the purchaser of the whiskey. The reasonable and logical deduction to be drawn from this evidence is that defendant furnished the whiskey and received the pay therefor.

We think the case was properly tried and affirm the judgment. All concur.